HARRY C. LIPSKY et al., Plaintiffs, *v.* NEW YORK TELEPHONE COMPANY, Defendant.

Supreme Court, Special Term, New York County, May 11, 1945.

*Walsh & Levine* for plaintiffs.

*Ralph W. Brown* for defendant.

HAMMER, J. This action is for an injunction restraining the defendant from publishing or distributing its classified directories in Manhattan, Bronx, Brooklyn and Queens, and its Queens alphabetical directory, unless the defendant inserts in the next and coming issues of such directories the various advertisements which the plaintiffs had in the issues of those directories which were in use on December 20, 1944.

The individual plaintiffs did business under various trade names: Nathan Lipsky, under the names of AAAAAA American Warehouse Furniture Exchange, World-Wide Fireproof Ware-

houses, American City-Wide Express Service; Harry, Nathan and Isidore Lipsky as North American Fireproof Warehouses; plaintiff Burlinger as AAAAAA Parkchester Rug & Carpet Cleaning Works and AAAAAA Certified Carpet Cleaning Company; and plaintiff Katkin as AAAAAA Certified Processing Service. All of the businesses are under the management of the three individual plaintiffs Lipsky.

The plaintiffs claimed that most of the trade names were suggested by defendant's representatives for the purpose of allowing the plaintiffs to get top positions in their advertisements. It is found as fact that representatives of the defendant, in answer to questions by the plaintiffs, stated that '' top positions depended upon the number of A's at the beginning of an advertiser's name '' and that the plaintiffs, of their own volition, selected all of the trade names mentioned.

Defendant's agents solicited and plaintiffs made application for various advertisements to be inserted in various classified directories, a number for one issue only, and some for two issues. The advertisements were inserted in the directories up to the issues prior to December, 1944. In December, 1944, the plaintiffs applied to have the same advertisements reinserted in the forthcoming issues of the telephone directories. Defendant refused to republish the advertisements. The plaintiffs requested an explanation of the refusal, and representatives of the defendant informed plaintiffs, or one of them who represented the others, that the defendant had received a communication in December, 1944, to which were attached newspaper clippings from daily newspapers published in the city of New York, stating, in substance, that Isidore Lipsky and Harry Lipsky, owners of the North American Fireproof Warehouses, Inc., 1135–37 Tiffany Street, Borough of The Bronx, City of New York, admitted that they had filed fraudulent documents in the Office of Price Administration. The defendant caused its representatives to make an investigation of the charges, including inquiries of Assistant United States Attorney Waters, who, it was ascertained, had charge of an investigation which led to indictments of plaintiffs Isidore Lipsky and Harry Lipsky. The defendant was informed by Mr. Waters that the plaintiffs were charged by the complaints which had come to the attention of the United States District Attorney with having charged much higher fees for storage and handling services than were charged by them during March, 1942. The accounts published in the newspapers stated, in effect, that many letters had been received from servicemen and their families which contained

charges against the Lipskys, and certain of the letters were referred to in the publications. One of the newspaper articles so published, which came to defendant's attention, stated " Swindle of service men admitted by storage warehouse owners." In the course of defendant's investigation, certain letters containing complaints of various people against the plaintiffs were exhibited to the defendant by the Better Business Bureau, Inc., of New York City. The investigations further disclosed that in February, 1944, Isidore and Harry Lipsky were indicted in the United States District Court for violation of Office of Price Administration price regulations, to which said defendants pleaded not guilty, but on November 24, 1944, changed their plea to that of guilty. The United States District Attorney informed the defendant that the investigation of the District Attorney's Office showed that numerous servicemen and their families had been victimized by the exorbitant prices charged, and that a number of letters had been turned over to the District Attorney's Office containing similar complaints from persons who had dealt with the Lipsky brothers. In the course of the investigation of the defendant, there was disclosed to it a statement of the United States District Attorney made to the United States District Judge, EDWARD A. CONGER, presiding in the United States District Court for the Southern District of New York on December 14, 1944, when plaintiffs Isidore Lipsky and Harry Lipsky were arraigned for sentence, in which the Assistant District Attorney referred to many letters by persons who complained that they had been victimized by the plaintiffs The indictment charged Isidore Lipsky and Harry Lipsky and the corporation North American Warehouses, Inc., with having knowingly and willfully presented two false and fraudulent and fictitious contracts to the Office of Price Administration in connection with the establishment of a base-period statement of prices charged by them for warehouse storage and services pursuant to the general maximum price regulations duly issued by the Price Administrator.

One of the documents falsely stated that the North American Warehouses, Inc., and Sidney Cannold had entered into a bona fide agreement for storage and services at the prices mentioned' in the contract; whereas the contract submitted was false and fictitious and there never was any such agreement between the parties for storage and services. The second document falsely stated that North American Warehouses, Inc., and Herman Elmer had entered into a bona fide agreement for storage and service at the prices mentioned therein; whereas it was false

and fictitious and there never had been any such agreement between the parties for storage and services.

Defendant ascertained that Isidore and Harry Lipsky were sentenced to imprisonment, for the offenses to which they pleaded guilty, for three months. North American Warehouses, Inc., was fined $2,500, and Certified Carpet Cleaning Corporation was fined $1,000. In the course of its investigations defendant also considered that on the back cover of the Queens telephone directory American City-Wide Express Service advertised "Absolutely Fireproof Warehouses, Featuring Individual Vaults". In the advertisement were depicted a large warehouse and a large motor moving van, under which in large type was the printing "Havemeyer 6-7200". Under that, in the center and at the bottom of the cover in smaller type was the following:

> "Long Island - Brooklyn
> 42-29 Judge St.
> Havemeyer 6-7200".

That telephone number is in fact that of the Professional Telephone Service, Inc., located at that address, to which the telephone service and listings are furnished by defendant.

While a telephone answering service may be a thoroughly legitimate enterprise, plaintiffs' acts and not that business are being considered here. None of the plaintiffs has a place of business or warehouse at that address. I find that persons of ordinary prudence, particularly such as in Long Island, might be looking for a storage warehouse in Queens and would be led by that advertisement to the belief that plaintiff North American Fireproof Warehouses, Inc., had the fireproof warehouse depicted, a telephone and a place of business at the address thus stated. This is regarded as misleading advertising. Alone this might not require a dismissal of the complaint or constitute reasonable ground for a refusal of plaintiffs' advertisements, even though correction might be required; but it must be considered in conjunction with the other facts found. Plaintiffs may not justify their acts on the ground that other advertisers do similar things and some of defendant's agents knew plaintiffs did not have a warehouse in Queens, or that despite such knowledge defendant previously accepted the advertisement. I find as fact that neither defendant nor any of its officers, agents or employees, acted in concert with any of the plaintiffs in doing any wrongful acts and that such as were done were the acts solely of plaintiffs or such of them who acted for the others.

The representative of the defendant informed the representative of the plaintiffs that because of the matters disclosed in its investigation and matters which had come to its attention, the defendant refused to reinsert the advertisements, as to do so might subject the defendant to a charge of participating in the acts of which complaint had been made against the plaintiffs. The conclusion is arrived at from a consideration of the evidence in the case that the defendant had reasonable grounds for the refusal by it of a renewal of the advertisements of the plaintiffs previously inserted in its directories, and under the facts shown the plaintiffs may not be regarded as coming into equity with clean hands.

Previously, by order to show cause, the plaintiffs moved for an injunction *pendente lite,* and Mr. Justice VALENTE, in denying the motion stated (N. Y. L. J., Jan. 13, 1945, p. 169, col. 1): "The conviction in the federal court was for filing false statements, the obvious purpose of which was to obtain higher prices than the proper ceilings would permit. Plaintiffs, in the circumstances, may not be regarded as coming into equity with clean hands and defendant's refusal to accept their advertising may not be held unreasonable as a matter of law on an application for a temporary injunction."

The plaintiffs contend that the defendant, as a public utility incorporated under the Transportation Corporations Law of the State of New York, published the telephone directories, including the classified directories, as an integral part of its business of furnishing telephone service or as an incident thereof under the jurisdiction of the Public Service Commission, and the performance of the public utility is impressed with a public interest which places the defendant under a legal obligation to serve with impartiality all who apply to defendant for advertising after complying with defendant's reasonable regulations. Plaintiffs assert that, as citizens, they are not confined to an application to the Public Service Commission for the enforcement of their private rights, but are entitled to relief by injunction. It is pointed out that the matter of jurisdiction of the Public Service Commission was considered by the commission and is the subject of its decision rendered in Case No. 9118 on June 9, 1937 (*Service Subscribers* v. *New York Telephone Co.,* [1937] 1 P. S. C. 676). There the Commission Chairman, Honorable Milo R. Maltbie, among other things, said (p. 680): " Our conclusion is that the publication of classified directories is not essential in the sense that telephone service could not be rendered without it, but rather that it is an inci-

dental part of telephone service so closely connected therewith that a telephone company has authority under the general powers granted to such companies within the state of New York to prepare, print and distribute classified directories so long as such directories do not make the ascertainment of telephone numbers incidental to the use of such directories as advertising media.''

Further on, Chairman Maltbie said (p. 682) : '' In all of the provisions cited, the jurisdiction conferred is very broadly stated. There is no limitation to ' essential ' telephone service. There is no statement that a telephone company may conduct a ' private ' business as it pleases, charging whatever it pleases, giving undue preference to certain persons and subjecting others to unjust discrimination. A corporation cannot be compelled to do many things, but if it elects to do them, it must proceed under the limitations and restrictions imposed by law. The mere fact that it does them voluntarily and not compulsorily does not give it authority to operate as it pleases. Thus, in the specific case at issue, it may be that the company could not be compelled (I do not say that it could not) to provide classified directories. But having done so, its charges, methods, practices, etc., come under the jurisdiction of this Commission, and if they are unreasonable or in any manner violate the law, the Commission has been given power to apply a remedy.''

The defendant, on the other hand, argues that, as publisher of a classified directory and all the advertisements contained therein, the defendant is under no duty to accept plaintiffs' application for advertisements, and that its position is analogous to that of a publisher of a newspaper or a magazine.

Case No. 9118 (*supra*), it appears, was discontinued and closed on the records of the commission following the filing by the telephone company of a tariff schedule covering certain light face listings in the classified directories.

In view of the conclusion reached in this case that the plaintiffs have not come into equity with clean hands and that on the facts shown to have come to the attention of the defendant in its investigation of the plaintiffs and their activities the defendant had reasonable ground to refuse the plaintiffs' advertisements, it is unnecessary to pass upon the question of the jurisdiction of the Public Service Commission and the other questions raised by the parties in respect thereto.

As all of the facts deemed necessary for the decision of the court are stated above, it is unnecessary for the parties to submit or for the court to pass upon any additional findings of fact or conclusions of law.

In view of the foregoing, the complaint is dismissed upon the merits and costs are awarded to the defendant. Submit judgment on notice.